IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RON HICKS,

      Petitioner,                          No. CIV S-07-1108 GEB CHS P

   vs.

M.C. KRAMER, Warden, et al.,

      Respondents.          FINDINGS AND RECOMMENDATIONS

                             /

## I. INTRODUCTION

Petitioner Ron Hicks is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner is currently serving an indeterminate sentence of fifteen years to life following his 1981 conviction in Los Angeles County for second degree murder. The pending petition challenges the execution of that sentence, and specifically, the October 20, 2005 decision of the Board of Parole Hearings finding petitioner to be unsuitable for parole.

## II. BACKGROUND

As set forth in the transcript of the October 20, 2005 parole suitability hearing ("BPHT"), petitioner committed his life offense after a drug deal went awry. Petitioner stated that he intended to purchase drugs from the victim. He realized that the drugs were "bad" and

1

struggled with the victim in an attempt to get his money back. The struggle ultimately led to the victim's death. The victim was stabbed and sustained multiple blows to the head with a buck knife. Petitioner fled to Hawaii after the murder and was returned to California. He was convicted of second degree murder in 1981 and sentenced to state prison for an indeterminate term of 15 years to life, with the possibility of parole.

Petitioner's minimum eligible parole date passed in October of 1990. On October 20, 2005, a panel of the Board of Parole Hearings ("Board") conducted a subsequent parole suitability hearing. After considering the positive and negative factors for petitioner's release, the panel determined that petitioner would pose an unreasonable risk of danger to society if released, and thus that he was not suitable for parole. Petitioner sought habeas corpus relief in the Los Angeles County Superior Court; his petition was denied. (Resp. Ex. 1.) The California Court of Appeal, Second District, and the California Supreme Court likewise denied his claims. (Resp. Ex. 2 & 3.)

### III. ISSUES PRESENTED

Petitioner contends that there was no evidence in the record to support the Board's denial of parole and that the state superior court's decision finding otherwise was contrary to, or an unreasonable application of federal due process law.

As set forth below, the federal due process standard is minimally stringent in the parole hearing context. The Board's decision must be upheld so long as there is "some evidence" in the record that could support the conclusion reached. In this case, that standard was met and petitioner is not entitled to relief.

### IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## V.  DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole

date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  However, if a state's statutory parole scheme uses mandatory language, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest.  *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).  The Ninth Circuit has conclusively determined that California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date.  *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

   The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding.  *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole.  *Greenholtz*, 442 U.S. at 16.  In addition, the Ninth Circuit has conclusively determined that Supreme Court law clearly establishes that "some evidence" must support a parole decision.  *Sass*, 461 F.3d at 1128-29; *McQuillion*, 306 F.3d at 904.

   Under the some evidence standard, a decision cannot be "without support" or "arbitrary."  *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *Biggs*, 334 F.3d at 915.  It must have some indicia of reliability.  *Id*.  The standard is "minimally stringent," and a decision must be upheld if there is any evidence in the record that could support the conclusion reached.  *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986).  Examination of the entire record is not required.  *Id*.  The Supreme Court has specifically directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence.

*Hill*, 472 U.S. at 455.  The only relevant question is whether there is *any* reliable evidence in the record that could support the decision reached.  *See Id*.; *Toussaint*, 801 F.2d at 1105.

In evaluating whether some evidence supported the Board's decision, the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851.  Thus, the court is bound by California's construction of its own parole suitability laws.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  The court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Irons*, 505 F.3d at 851.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers.  The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole.  *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008).  The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. § 2402(b).  The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole.  15 Cal. Code Regs. § 2402(c)-(d).  The overriding concern is public safety and the focus is on the inmate's *current* dangerousness.  *In re Lawrence*, 44 Cal. 4th at 1205.  Thus, the proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence

5

indicates that a parolee's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008).  In other words, there must be some rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

In this case, the panel commended petitioner for many of his accomplishments:

> Mr. Hicks, I will compliment you.  You've kept yourself disciplinary-free since that stimulants, sedatives deal in 1990, and that may have been nothing more than you just passing a box along unbeknownst, but it does stand on the record.  You have kept yourself clean since then.  You have completed three FEMA courses since your last hearing, and that is commendable.  You have sustained yourself throughout your incarceration in NA, and particularly of note, since '01, every consecutive year, you have been involved religiously in NA addressing that issue.  You have excellent work reports.  You're grounds keeper and yard crew over a period of time, and I would compliment you for the number of chronos that you've gotten, positive chronos from institutional staff that deals with you daily and probably are the best assessors of how you're comporting yourself within the institution.  You know, that is excellent and way above the norm.  In addition, you have been quite inventive with coming up with a pencil holder, a toy box with the child-safe opening top, and a cat potty that's quite inventive.  We've enjoyed looking at those things of accomplishment.

(BPHT at 114-116.)  Ultimately, however, the panel determined that petitioner's inadequate parole plans and other negative factors for his release outweighed the positive factors.  The panel stated that it had relied on the following circumstances in concluding that petitioner was not suitable for parole and would still pose an unreasonable risk of danger to society if released under the current conditions:

> The offense was carried out, in this regard, in a very cruel and callous manner.  Specifically, the victim was struck multiple times with blows to the head and a stab wound to his chest which ultimately led to his death.  The offense was carried out in a manner which demonstrates a callous disregard for the consequences in a drug transaction that went bad.  The murder of the victim -- let's go back to the drug transaction issue.  The drug transaction was bad.  The motive for the crime was trivial in relation to the offense in that during an illegal drug and heroin sale, there was a death of one of the parties, that being the person selling the drugs, and that Inmate Hicks discovered that the drugs that he had planned to purchase from the victim were in fact bad, and in

6

trying to get his money back ended up in a struggle with the victim which ultimately led to the death of the victim by stab wound and multiple blows to the head with a buck knife. The murder of the victim did not deter the prisoner from later committing a criminal offense; specifically, and that after he knew of the victim's death, he fled to Hawaii. He then was returned to California and booked in jail, and then fled to Texas as a fugitive. The prisoner has in many ways failed to profit from society's previous attempts to correct his criminality. In this regard, such attempts have been adult probation, county jail time, prior prison terms on more than one occasion, and various elements of parole some of which have [gone bad]. He had an unstable social history. He started using alcohol at a very early age, use of drugs such as marijuana, heroin, PCP, and LSD. He's had two failed marriages, produced one daughter, which the inmate has no contact. His criminal history officially began on 12/11/1971, and continued to his commitment which began on 11/11/1981, which included such crimes as reckless driving, assault on a police officer, possession of marijuana for sale, again, possession of marijuana for sale, burglary, receiving stolen property, further marijuana, possession of marijuana, under the influence of drugs, possession of drug paraphernalia, assault with a deadly weapon, and escape from jurisdiction which includes the then aforementioned escape from the Los Angeles County Jail and his eventual fleeing to Texas where he was then returned to Los Angeles. The prisoner has programmed well while incarcerated, developed marketable skills that hopefully can be put to use upon release. He has failed to upgrade himself educationally and has only one vocation, that being silk screening in his 22 years of being in prison. He has participated in beneficial self-help programs and self-improvement programs. In this regard, it is improving his artistic ability over the years while in prison. He has never had a 128 chrono, which is remarkable. He's only had two 115 disciplinary reports, the last one being on 8/14 of 1990, and that was for holding of stimulants, sedatives and the trafficking in narcotics. That of course, is a troubling 115, but that in fact was approximately 15 years ago. The psychological report dated 10/9 of 2002, by C. Giantonio, PhD, was favorable... His parole plans, he appears to have viable residential plans. He does not have viable or acceptable parole plans. He does have a marketing skill. In regard to the employment plans, this Panel is concerned that with all his accomplishments, Mr. Hicks has failed to develop consistent parole plans. While he has offers of residential support in his most recent support letters, they do appear to differ from the plan that was stated in the Board report. Additionally, he has stated he has, his stated job plan in the Board report appears to be no longer available and substituted by a note from a former inmate who is planning to start a business but provides no particular detail or substance to his offer. We believe that because of Mr. Hicks' former problems in crime, alcohol, and drugs it is absolutely necessary that he has a firm parole plan that includes a stable and

7

     verifiable opportunity for employment, so he'll not find [the need
     to] return to criminality.

(BPHT at 108-114.)

    Despite petitioner's argument to the contrary, there is some evidence to support the Board's conclusion in this regard. Petitioner's conduct in prison had been exemplary, however, his life crime was not an isolated incident. Petitioner amassed an extensive criminal record in the ten years prior to his incarceration for the instant offense and he attributes much of his criminal behavior to past drug and alcohol abuse. Given petitioner's extensive criminal record and serious history of substance abuse problems, it was reasonable for the Board to require him to present a stable, consistent, and verifiable plan for his parole, including residential and employment plans, in order for him to be found suitable.

    Instead, the Board found that petitioner's plans as set forth in the Board report were not consistent with what he presented at the hearing. Petitioner had indicated that he would reside with his brother in Chino Hills, and that he would be employed with the Darby Construction Company in Covina, California. (BPHT at 41.) At the hearing, however, he stated that his employment plans had changed and that he would be working for a different company in Riverside. (BPHT at 42.) Petitioner offered a letter of support from a friend and former inmate, who wrote of an opportunity for petitioner with his silk screening venture. (BPHT at 44.) The letter did not specify, nor was petitioner aware, what the opportunity was or what pay or benefits might be available. (BPHT at 46.) Petitioner further indicated at the hearing that he had also changed his residence plans since submitting the Board report and that he now planned to reside with his mother instead of his brother. (BPHT at 102.) The Board concluded that petitioner had failed to develop solid and consistent plans for his parole.

    A prisoner's understanding and plans for the future comprise one factor tending to indicate suitability for parole, at least where the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release." *See* Cal. Code Regs.

§2402(d)(8). Petitioner is a skilled artist and it appears that his long term plan is to make a living from selling prints of his artwork. (BPHT at 102.) The Board was concerned, however, that even if petitioner's art was determined to be commercially marketable, that he had not made adequate plans for meeting his basic needs during the time immediately after his release, before he would begin seeing proceeds from any art sales. (BPHT at 116-117.) There is no requirement that a prisoner obtain a formal job in order to be found suitable for parole. It was nevertheless reasonable for the Board to conclude that petitioner's plans were lacking where the only evidence of his employment plan was a vague letter giving no details of the position or pay, and no additional evidence appeared in the record regarding how he would support himself financially. Petitioner's failure to present a solid, consistent plan for parole to the Board constitutes at least one piece of reliable evidence that he was not suitable to be released at that time.

In this case, the record contains with respect to an assessment of petitioner's current dangerousness many positive factors, which this court is precluded from re-weighing against the negative factors. Due process requires that the Board's decision be supported by some evidence in the record and that modicum is present in this case. There is some reliable evidence in the record to support the panel's conclusion that petitioner was unsuitable for parole based on his commitment offense and extensive criminal history, combined with his lack of consistent and verifiable plans for parole. The state court decision upholding the Board's decision is not contrary to, or an unreasonable application of any clearly established due process law, as determined by the Supreme Court. Accordingly, petitioner is not entitled to relief on his claim that the Board's decision finding him unsuitable for parole violated his right to due process.

## VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 11, 2010

    /s/ Charlene H. Sorrentino
Charlene H. Sorrentino
United States Magistrate Judge